UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___12/7/2022___
```

SILVIO R. ILLESCAS,

                                    Plaintiff,

                 -against-

ANTHONY J. ANNUCCI, DR. JOHN
MORLEY, DR. ROBERT V.
BENTIVEGNA, ALBERT ACRISH,
VASSAR BROTHERS MEDICAL
CENTER, SAJIN A. PILLAJ, JESSE M.
WOLSTEIN, DR. BRUCE R. GENDRON,
HECTOR OJEDA-MARTINEZ, SEHRISH
SHAHID, and DR. ROBERT U.
MMEREOLE,

                                    Defendants.

21-cv-8473 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

        Plaintiff Silvio R. Illescas ("Plaintiff"), proceeding *pro se* and *in forma pauperis*,

commenced this 42 U.S.C. § 1983 action against Defendants Anthony J. Annucci, Dr. John Morley,

Dr. Robert V. Bentivegna, Albert Acrish, Vassar Brothers Medical Center, Sajin A. Pillaj, Jesse M.

Wolstein, Dr. Bruce R. Gendron, Hector Ojeda-Martinez, Sehrish Shahid, and Dr. Robert U.

Mmereole (collectively, the "Defendants") through a Complaint filed on October 13, 2021.

(Complaint ("Compl.") (ECF No. 1).)   Plaintiff asserts claims for medical indifference under 42

U.S.C. § 1983 and Article I, § 5 of the New York State Constitution.  (*Id.*)  Presently before the

Court are Defendants' motions to dismiss Plaintiff's Complaint pursuant to the Federal Rules of

Civil Procedure Rule 12(b)(6).  (ECF Nos. 49, 50, 53, and 55.)  For the following reasons,

Defendants' motions are GRANTED.

**BACKGROUND**

The following facts are derived from the Complaint and the documents appended thereto and are assumed to be true for the purposes of this motion.

Plaintiff is an inmate currently incarcerated at Green Haven Correctional Facility ("Green Haven"). The events of this litigation arise out of Plaintiff's bout with COVID-19 and the treatment he received thereafter.

On April 4, 2020, Plaintiff registered a temperature of 102 degrees and had developed problems breathing. (Compl. at ¶ 10.) He spent the next five days at the Green Haven medical clinic, where his fever worsened. (*Id.*) He reached a temperature of 103 degrees on April 9, 2020, at which point Plaintiff was administered a COVID-19 test. (*Id.* at ¶ 11.) Plaintiff tested positive. (*Id.*)

Upon his positive test, Plaintiff was transferred to a hospital, Defendant Vassar Brothers Medical Center ("Vassar Brothers"), where he received treatment until his discharge on April 13, 2020. (*Id.* at ¶¶ 11–13.) During his stay at Vassar Brothers, Plaintiff was treated with a number of medications every couple of hours. (*Id.* at ¶ 11.) Plaintiff alleges he was "never told what the medication was for nor if there was [sic] any side effects attributed to these medications." (*Id.*) Plaintiff also received potassium pills due to his "low potassium levels." (*Id.* at ¶ 12.) On April 13, Plaintiff was still experiencing lingering symptoms of COVID-19, including "breathing issues, diarrhea, and dizziness." (*Id.* at ¶ 13.) Plaintiff, however, was transported back to Green Haven where he spent the next week in the prison's medical center. (*Id.* at ¶¶ 13–14.) He continued to experience the same symptoms, which prison staff attempted to address by giving him oxygen. (*Id.* at ¶ 14.)

On April 20, 2020, Plaintiff was released from the prison medical center and escorted back to his cell. (*Id.* at ¶ 15.) He alleges he was still suffering from lingering symptoms of COVID-19.

(*Id.*)  He also developed other complications: "bodily pains that radiated from various organs and areas such as lungs, kidneys, stomach, back, joints . . ., testicles . . ., groin area, and anal and rectal pain."  Plaintiff also reported "hair falling out" and "extreme sexual desire."  (*Id.*)  Accordingly, Plaintiff used the prison's "sick call" mechanism to request treatment.  (*Id.* at ¶ 16.)  Plaintiff was granted his requests for medical appointments, meeting with Defendant Albert Acrish, a nurse practitioner, on multiple occasions.  (*See generally id.* at ¶¶ 17, 19–20.)  At Plaintiff's May 7, 2020 appointment, Defendant Acrish "explained that [Plaintiff's] pains and symptoms were normal after a bout with Covid-19."  (*Id.* at ¶ 17.)  Defendant Acrish requested a stool sample, which later came back negative.  (*Id.* at ¶¶ 17, 20.)  Plaintiff again met with Defendant Acrish on June 4, 2020 and June 16, 2020.  (*Id.* at ¶¶ 19–20.)  Defendant Acrish again suggested Plaintiff was suffering from continued COVID-19 symptoms, and as a result, Defendant Acrish prescribed Naproxen to address the "aches and pains" Plaintiff was suffering in his "joints and bones."  (*Id.*)

Unsatisfied with his treatment, Plaintiff filed a number of grievances seeking "adequate medical care" and a "change in his medical provider," Defendant Dr. Robert Bentivegna, supervisor of Green Haven's medical clinic.  (*Id.* at ¶¶ 23–24.)  By letters dated August 6, 2020 and August 12, 2020, Plaintiff requested Defendant Bentivegna change his medical provider.  (*Id.*)  Defendant Bentivegna refused both times, in letters dated August 7, 2020 and August 13, 2020, respectively.  (*Id.*)  Plaintiff then wrote to the Ecuadorian Consulate in New York to request assistance in receiving "medical care."  (*Id.* at ¶ 25.)  The Consulate arranged a phone call between Plaintiff and Green Haven's Superintendent to address Plaintiff's medical care.  (*Id.*)  As a result, Plaintiff was transferred to Putnam Center Hospital on October 9, 2020 for a CAT scan of his head and brain.  (*Id.* at ¶ 26.)  Plaintiff alleges he never received or discussed the results of his CAT scan or a blood test taken days later.  (*Id.*)  Plaintiff was discharged and returned to Green Haven.  (*Id.*)

On March 10, 2021, Plaintiff sent a letter to Defendant Dr. John Morley, Deputy Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"). (*Id.* at ¶ 30(a).[1]) Susanna Nayshuler, a non-party serving as Regional Health Service Administrator for DOCCS, answered Plaintiff's request by advising Plaintiff to use Green Haven's sick call procedures. (*Id.* at ¶ 31(a).) Plaintiff saw Defendant Acrish twice more. On July 13, 2021, Defendant Acrish told Plaintiff he had developed "an infection in his stomach, gastroesophageal inflammation, and the beginnings of gastric ulcers." (*Id.* at ¶ 30(b).) Defendant Acrish prescribed Plaintiff two antibiotics, Amoxicillin and Metronidazole, as well as Omeprazole, a medication used to treat stomach ulcers. (*Id.*)

Plaintiff then began experiencing complications on July 23, 2021, including a "swollen stomach with an intense burning feeling, headache, dizziness, and a fever." (*Id.* at ¶ 31(b).) Plaintiff visited the medical clinic but could not receive further help because it was the weekend; he was scheduled for an appointment on July 25, 2020. (*Id.* at ¶¶ 31(b)–32.) In the meantime, he "stopped taking his medication." (*Id.* at ¶ 31(b).) On July 25, 2020, Plaintiff was prescribed "non-aspirin medication for his fever" by a staff nurse. (*Id.* at ¶ 32.) Plaintiff alleges the medication was six months expired. (*Id.*)

The next month, Plaintiff complained of "stomach issues," "dizziness," and an "intense headache." (*Id.* at ¶ 33.) He saw Defendant Acrish, who purportedly "ridiculed him" and said "there was nothing he could do and that everything was good even though Claimant was in severe pain." (*Id.*) Nonetheless, Defendant Acrish prescribed Plaintiff Famotidine, a medication used to treat stomach ulcers. (*Id.*)

---

[1] Plaintiff includes two separate paragraphs labeled 30 and 31, respectively. For ease of reference, this Court labels them 30(a), 30(b), 31(a), and 31(b).

## LEGAL STANDARDS

### I.      Fed. R. Civ. P. 12(b)(6)

On a Fed. R. Civ. P. 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 555.  A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Pro se complaints are to be liberally construed.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief."  *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)).  This "is particularly so when the pro se plaintiff alleges that [his] civil rights have been violated."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).  Pro se complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief."  *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

### II.     42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  Section 1983

"is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.' " *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

Read liberally, Plaintiff is asserting the following Section 1983 claims: (1) deliberate indifference to medical needs against Defendants Vassar Brothers, Sajin A. Pillaj, Jesse M. Wolstein, Dr. Bruce R. Gendron, Hector Ojeda-Martinez, Sehrish Shahid, and Dr. Robert U. Mmereole (collectively, the "Vassar Defendants"); and (2) deliberate indifference to medical needs against Defendants Anthony J. Annucci, Morley, Bentivegna, and Acrish (collectively, the "State Defendants") in their individual and official capacities. Defendants filed four respective motions to dismiss Plaintiff's claims. ECF No. 49 (Defendant Gendron); ECF No. 50 (State Defendants); ECF No. 53 (Defendant Wolstein); and ECF No. 55 (Defendants Vassar Brothers, Pillaj, Ojeda-Martinez, Shahid, and Mmereole).

As discussed below, the Court GRANTS all four motions to dismiss, thus dismissing all claims without prejudice.

## I.     Threshold Issues

### A.     Lack of State Action

As a threshold matter, the Court dismisses claims against the Vassar Defendants on the grounds that they do not qualify as state actors for the purposes of Section 1983. The Vassar

6

Defendants can only be liable pursuant to Section 1983 to the extent that it is appropriate to treat them as state actors in their provision of medical care to Plaintiff.  Courts have sometimes found non-public medical providers to be state actors when they provide medical care to inmates at a prison facility.  *See, e.g., West v. Atkins*, 487 U.S. 42, 50–51 (1988).  Likewise, courts have treated non-public medical providers to be state actors when they provide inmates with medical treatment outside of a prison pursuant to a contract.  *See, e.g., Rodriguez v. Mount Vernon Hosp.*, No. 09-CV-5691, 2010 WL 3825736, at *4 (S.D.N.Y. Sept. 7, 2010) (determining that the plaintiff's proposed amended complaint would not be futile when it sought punitive damages from an "outside physician who work[ed] for an outside hospital that [DOCCS] ha[d] a contract with to render services to its inmates" because "a doctor may still be considered a state actor as long as the doctor was obligated, even if indirectly, to provide medical services to state inmates" (citations, record citation, and quotation marks omitted)), adopted by 2010 WL 3825715 (S.D.N.Y. Sept. 30, 2010), *aff'd*, 2010 WL 3959602 (S.D.N.Y. Oct. 5, 2010); *Garraway v. Artuz*, No. 01-CV-3126, 2002 WL 221584, at *6 (S.D.N.Y. Feb. 13, 2002) (determining that a private physician was a state actor when his employer was "a party to a contract that require[d] him to provide medical services to prisoners in the State of New York").  However, courts have held that the provision of medical care by a private hospital to an individual in police custody on the same terms as the hospital would provide to the public at large does not satisfy the state action test, *i.e.*, when a private doctor is alleged to provide services for an inmate outside of a correctional facility but there is no allegation that the medical services were provided pursuant to a contract or state compulsion.  *See, e.g., Kavazanjian v. Rice*, No. 03-CV-1923 (FB), 2008 WL 5340988, at *12 (E.D.N.Y. Dec. 22, 2008) ("Providing isolated emergency treatment to a prisoner on equal terms with the general public . . . does not constitute state action" (citation omitted).); *see also Sykes v. McPhillips*, 412 F. Supp. 2d 197, 203 (N.D.N.Y. 2006) (finding inmate hospital was not a state actor for Section 1983 purposes

where it provided medical care to prisoner brought to it by state for emergency medical treatment); *Morse v. City of N.Y.*, No. 00-CV-2528, 2001 WL 968996, at *8 (S.D.N.Y. Aug. 24, 2001) (noting that fact that plaintiff was brought to hospital from police custody was insufficient to transform private hospital and staff into state actors for Section 1983 purposes).

Here, the Vassar Defendants are alleged to have treated Plaintiff at a private hospital, and there is no allegation that this treatment was provided pursuant to a contract between the government and the private hospital. The only nexus alleged is that the Vassar Defendants were told by prison officials that Plaintiff was "doing well" and could be discharged. (Compl. at ¶ 13.) This allegation fails to show the Vassar Defendants were monetarily incentivized or otherwise captured by government compulsion and is thus insufficient to satisfy the state action test. Accordingly, the Vassar Defendants' respective motions to dismiss are GRANTED. Claims against the Vassar Defendants are dismissed without prejudice, and Plaintiff is granted leave to amend his complaint to correct deficiencies identified herein.

### B.    Claims against Defendants in their Official Capacities

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) ("The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents ... that are, effectively, arms of a state."). State officials therefore cannot be sued in their official capacities for retrospective relief, including damages, under Section 1983. *Will*, 491 U.S. at 71. Nonetheless, state officials can be subject to suit in their official capacities for injunctive or other prospective relief. *Id.* at 71 n. 10 ("[O]fficial-capacity actions for prospective relief are not treated as actions against the State."); *Ex parte Young*, 209 U.S. 123 (1908).

The State Defendants are employed by the State of New York, and thus damages are available against them in their official capacities only to the extent that damages would be available against the State. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity." *Gollomp*, 568 F.3d at 366. "New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983." *Al Javier v. Russo, et al.*, No. 21-CV-7097 (LTS), 2021 WL 4252061, at *5 (S.D.N.Y. Sept. 17, 2021) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)).

"[I]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Plaintiff's request for money damages pursuant to Section 1983 is retrospective, as it seeks damages for past conduct and is therefore barred by the Eleventh Amendment. *See Hauff v. State Univ. of N.Y.*, 425 F. Supp. 3d 116, 128 (E.D.N.Y. 2019) ("New York State has not waived its Eleventh Amendment immunity and consented to suit in federal court under the NYSHRL."); *Roniger v. McCall*, 22 F. Supp. 2d 156, 161 (S.D.N.Y. 1998) ("Money damages are available under § 1983 only in suits brought against officials in their personal capacities, since money damages against a state are barred by the Eleventh Amendment.") (citations omitted); *Fedele v. Harris*, 69 F. Supp. 3d 313, 318–19 (N.D.N.Y. 2014) ("Suits for damages arising under 42 U.S.C. § 1983 are barred by the Eleventh Amendment unless the state has specifically waived its immunity."); *Mamot v. Bd. of Regents*, 367 F. App'x. 191, 192 (2d Cir. 2010) ("It is well-established that New York has

not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity."); *see also Will*, 491 U.S. at 66.  Plaintiff's request for declaratory relief is likewise barred.  *See Mateo v. Westchester Cnty.*, No. 18-CV-03499 (NSR), 2020 WL 5802838, at *5 (S.D.N.Y. Sept. 29, 2020) ("Additionally . . . absent a request for prospective relief, the Eleventh Amendment bars declaratory relief in the form of a statement that Plaintiff's constitutional right has been violated in the past.").

Claims against the State Defendants in their official capacities are dismissed without prejudice, and Plaintiff is granted leave to amend his complaint to correct deficiencies identified herein.

### C.    Lack of Personal Involvement

Plaintiff additionally asserts claims against Defendants Annucci, Morley, and Bentivegna in their individual capacities.  While these Defendants hold positions of authority within DOCCS, "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority."  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  Rather, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity."  *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir.) (emphasis added), *cert. denied sub nom. Brooks v. Pataki*, 137 S. Ct. 380 (2016).  As the Second Circuit has explained, the personal involvement of a supervisory defendant may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference

10

to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Plaintiff fails to explain how Defendant Annucci was involved in the alleged constitutional deprivations. Indeed, the Complaint is entirely devoid of any mention of Defendant Annucci beyond his name in the case caption and list of defendants. With no factual allegations tying him to the constitutional violations at issue in this case, Defendant Annucci cannot be held personally liable.

Plaintiff alleges Defendant Morley received a letter written by Plaintiff and assigned a subordinate to respond to Plaintiff's letter. (Compl. at ¶ 30.) This allegation, does not, by itself, suffice to establish personal involvement. "Ample Second Circuit case law makes clear that a Plaintiff does not state a claim where he alleges only that a supervisory official received reports of wrongdoing." *Samuels v. Fischer*, 168 F. Supp. 3d 625, 637 (S.D.N.Y. 2016) (citations omitted). Mere "knowledge and acquiescence" to unconstitutional conduct, or mere failure to act on a complaint, without more, fails to state a claim against a Section 1983 defendant. *Faulk v. N.Y. City Dep't of Corr.*, No. 08-CV-01668(LGS), 2014 WL 239708, at *10 (S.D.N.Y. Jan. 21, 2014) (citing *Iqbal*, 556 U.S. at 677); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (holding that DOCCS Commissioner was not personally involved simply because Plaintiff wrote complaint letters to him); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("[T]he receipt of letters or grievances, by itself, does not amount to personal involvement."). Plaintiff does not cite any other conduct of Defendant Morley to establish his personal involvement in the alleged constitutional violations; as such, Defendant Morley cannot be held personally liable.

Defendant Bentivegna likewise cannot be held liable. Plaintiff alleges Defendant Bentivegna received and rejected Plaintiff's letters requesting a new medical provider be assigned.

(Compl. at ¶¶ 23–24.)  As stated above, it is not enough to allege Defendant Bentivegna merely received Plaintiff's letters.  *See Mateo*, 682 F. Supp. 2d at 430.  Plaintiff has no constitutional right to be re-assigned a medical provider of his choosing.  *See, e.g., McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) ("[T]here is no right to the medical treatment of one's choice.").  At best, Plaintiff alleges Defendant Bentivegna was involved in adjudicating Plaintiff's request for a new medical provider, not in denying medical treatment to Plaintiff.  Moreover, a defendant's denial of an administrative grievance or decision not to override the medical personnel's advice is inadequate to establish liability.  *See Battle v. Recktenwald*, No. 14-CV-2738 (VB), 2016 WL 698145, at *10 (S.D.N.Y. Feb. 19, 2016).  As a result, Plaintiff's claims against Defendant Bentivegna for denying his grievance is insufficient to establish personal involvement or "to shed any light on ... knowledge on the part of the defendant." *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) (holding that defendant's affirmed denial of plaintiff's grievance is insufficient to establish personal involvement).  Because Plaintiff does not allege Defendant Bentivegna participated directly in denying Plaintiff medical treatment or otherwise failed to act on information indicating the occurrence of unconstitutional activity, Defendant Bentivegna cannot be held personally liable. *Cf. Bright v. Annucci, et al.*, No. 18-CV-11111 (NSR), 2021 WL 4461682, at *14 (S.D.N.Y. Sept. 28, 2021) (denying motion to dismiss where prison doctor witnessed plaintiff bleeding and failed to offer any treatment "*whatsoever*," resulting in plaintiff's permanent injuries (emphasis in original)).

Claims against the Defendants Annucci, Morley, and Bentivegna in their individual capacities are dismissed without prejudice, and Plaintiff is granted leave to amend his complaint to correct deficiencies identified herein.

The Court now addresses Plaintiff's remaining Section 1983 claim: deliberate indifference to medical needs alleged against Defendant Acrish in his personal capacity.

12

## II.       Deliberate Indifference to Medical Needs

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.   However, the Eighth Amendment's protection extends beyond claims of a disciplinary context and further "imposes a duty on prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).   The Supreme Court concluded that "deliberate indifference to an inmate's medical needs is cruel and unusual punishment" because "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (citation omitted).

To satisfy an Eighth Amendment claim for inadequate medical care, a plaintiff must demonstrate: (1) an objectively serious medical need, which "exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain' " and (2) Defendant's subjective "deliberate indifference," measuring whether the prison official acted with a sufficiently culpable state of mind. *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

To establish that a medical condition was "sufficiently serious" a plaintiff must allege "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Coke v. Med., Dep't of Corr. & Cmty. Supervision*, No. 17-CV-0866 (ER), 2018 WL 2041388, at *3 (S.D.N.Y. Apr. 30, 2018).   There are various relevant factors that the court may consider when deciding whether a medical condition is "sufficiently serious" including: chronic and substantial pain or presence of a medical condition that significantly affects an individual's daily activities. *Id.* However, an actual physical injury is not necessary to claim inadequate medical care. *Smith v. Carpenter*, 316 F.3d 178, 188 (2d Cir. 2003).   Rather, a sustainable inadequate medical care claim can be based on an inmate's exposure to an unreasonable risk of future harm. *Id.*   Nonetheless, as

13

the Supreme Court noted, a prison officials' duty is only to provide reasonable care.  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Additionally, "[m]edical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness – 'an act or a failure to act by [a] prison doctor that evinces a conscious disregard of a substantial risk of serious harm.' "  *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ) (internal quotation omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976) (noting that an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind" (quotations omitted)); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (observing that "negligent malpractice do[es] not state a claim of deliberate indifference"); *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation").

The Supreme Court has explained that an Eighth Amendment violation occurs when a prison official demonstrates " 'deliberate indifference' to a substantial risk of serious harm." *Farmer*, 511 U.S. at 837.  This standard assesses whether the charged defendant had a mental state of mind equivalent to criminal recklessness wherein the official knew and disregarded an "excessive risk to inmate health or safety."  *Id.; see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (noting that "deliberately refus[ing]" to treat a medical condition "with conscious disregard of the substantial risk of serious harm" constitutes deliberate indifference). Consequently, mere negligence is insufficient to state a claim of deliberate indifference.  *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017).  Instead, a defendant's conduct must reveal an element

of intention or recklessness.  *Id.* ("A detainee must prove that an official acted intentionally or recklessly, and not merely negligently").

Giving Plaintiff every favorable inference and construing Plaintiff's Complaint in the most favorable light, "taking its factual allegations to be true," the allegations fail to state a plausible claim.  *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  Plaintiff cannot show deliberate indifference by the Defendant sufficient to satisfy the subjective prong of the analysis.  There are no allegations suggesting Defendant Acrish *knew of* and intentionally disregarded an excessive risk to Plaintiff's health; let alone that Defendant acted in a way that resulted "in unquestioned and serious deprivations of basic human needs."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  At best, Plaintiff's allegations amount to a misdiagnosis which is insufficient to state a cause of action under the Eighth Amendment.  *See Harris v. Westchester Cnty. Med. Ctr.*, No. 08-CV-1128 (RJH), 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011) ("Allegations of ... misdiagnosis do not state a cause of action under the Eighth Amendment").  Thus, Plaintiff's claims must be dismissed as they do not rise to the level of deliberate indifference.

Moreover, "[d]isagreements over medications, diagnostic techniques ..., forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim."  *Sonds v. St. Barnabas Hops. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (emphasis added).  Although a delay in referral for a medical diagnosis may constitute an Eighth Amendment violation, these delays are only reserved in situations where "officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years."  *Id.*  In a situation where the plaintiff did receive some care "inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim."  *Brown v. Selwin*, 250 F. Supp. 2d 299, 308

(S.D.N.Y. 1999), *aff'd*, 29 F. App'x 762 (2d Cir. 2002) (citing *Suarez v. Camden County Board of Chosen Freeholders*, 972 F. Supp. 269, 276 (D.N.J. 1997)).

Plaintiff's "difference[ ] of opinion regarding medical treatment do[es] not give rise to an Eighth Amendment violation." *Atkins v. Cty. of Orange*, 372 F. Supp. 2d 377, 408 (S.D.N.Y. 2005) (citing *McCoy v. Goord*, 255 F. Supp. 2d 233, 259 (S.D.N.Y. 2003)).   Plaintiff herein does not allege a lack of medical treatment. In fact, Plaintiff admits that he did receive medical treatment, as he was taken to the hospital for COVID-19 treatment in April 2020 (Compl. at ¶¶ 10–12), seen by Defendant Acrish and prison staff on multiple occasions (*see generally id.* at ¶¶ 10, 14, 17, 19– 20, 30–33), prescribed several different medications to address his evolving symptoms (*see generally id.* at ¶¶ 11, 12, 19, 30, 32–33), and transported to a hospital for a CAT scan (*id.* at ¶ 26). Rather, Plaintiff purely disagrees with the medical treatment he received, which is insufficient to support an Eighth Amendment claim.   *See Sonds*, 151 F. Supp. 2d at 312 (explaining that "[d]isagreements over medications, diagnostic techniques . . ., forms of treatment, or the need for specialists or the timing of their intervention" do not implicate the Eighth Amendment).

The remaining federal claim against Defendant Acrish in his individual capacity is dismissed without prejudice, and Plaintiff is granted leave to amend his complaint to correct deficiencies identified herein.

## III.   State Law Claims

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."   28 U.S.C. § 1367(c)(3).   With the dismissal of Plaintiff's Section 1983 claim against all Defendants, there remains no independent jurisdictional basis for his remaining state law claims.   *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent

jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). In addition, where the federal claims are dismissed at an early stage in the litigation, the Second Circuit has generally held that it is inappropriate for the district court to exercise supplemental jurisdiction. *See, e.g., Giordano v. City of New York*, 274 F.3d 740, 754–55 (2d Cir. 2001); *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998); *Castellano v. Bd. of Trs. of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 758 (2d Cir. 1991).

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' motions are GRANTED and Plaintiff's claims are thus dismissed without prejudice.

Plaintiff is granted leave to replead any claims that were dismissed without prejudice. He may file an Amended Complaint consistent with this Opinion on or before January 10, 2023. Failure to file an Amended Complaint within the time allowed, and without good cause to excuse such failure, will result in dismissal with prejudice of all claims that this Court has dismissed without prejudice in this Opinion.

Plaintiff is further advised that an amendment to a complaint completely supplants the previous complaint. In other words, he must include all allegations he wishes to be considered in the Amended Complaint and if he fails to include any allegations he cannot rely upon the fact that he previously asserted allegations in the Complaint. An amended prisoner civil rights complaint is attached to this Opinion.

If Plaintiff does file an Amended Complaint, Defendants are directed to file an answer or otherwise respond to the Amended Complaint on or before February 9, 2023.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 49, 50, 53, and 55.  The Clerk of Court is further directed to mail a copy of this Opinion & Order (including the attached amended complaint form) to *pro se* Plaintiff at his address listed on ECF and to show service on the docket.

SO ORDERED:

Dated:   December 7, 2022
         White Plains, New York

_____
        NELSON S. ROMÁN
     United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____
(Include case number if one has been
assigned)

**AMENDED**

**COMPLAINT**

(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

## I.     LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.     PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name              Middle Initial          Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                          State                  Zip Code

## III.     PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name                    Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State                    Zip Code

Defendant 2:

First Name                    Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State                    Zip Code

Defendant 3:

First Name                    Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State                    Zip Code

Defendant 4:

First Name                    Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State                    Zip Code

## V.      STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6