USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/25/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SILVIO R. ILLESCAS,

                Plaintiff,

-against-

ANTHONY ANNUCI, VASSAR BROTHERS MEDICAL CENTER, DR. DANIEL E. LAURIE, DAR SAJIN A PILLAI, DR. JESSE WOLSTEIN, DR. HECTOR I. OJEDA-MARTINEZ, SEHRISH SHAHID, DR. ROBERT U. MMEROLE

                Defendants.

21-cv-8473 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

*Pro se* Plaintiff Silvio R. Illescas ("Plaintiff") initiated this action on October 13, 2021, alleging deprivation of rights under 42 U.S.C. § 1983 ("Section 1983") claiming violations of the Eighth Amendment and Fourteenth Amendment, as well as Article I, § 5 of the New York State Constitution, against Defendant Vassar Brothers Medical Center ("Vassar Brothers"), Defendant Doctor Daniel E. Laurie ("Laurie"), care physician provider, Defendant Doctor Sajin A. Pillai ("Pillai"), medical doctor provider, Defendant Doctor Hector I. Ojeda-Martinez ("Ojeda-Martinez"), medical doctor provider, Sehrish Shahid ("Shahid"), physician provider, Defendant Doctor Robert U. Mmereole ("Mmereole"), medical doctor provider, (together, "Vassar Defendants"), Defendant Anthony J. Annucci ("Annucci"), acting commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"), and Defendant Doctor Jesse M. Wolstein ("Wolstein"), primary care physician provider.

1

Presently before the Court are Vassar Defendants, Annucci and Wolstein's Motions to Dismiss Plaintiff's claims as against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). For the following reasons, the motions are GRANTED.

## BACKGROUND

The following facts are derived from the Second Amended Complaint ("Am. Compl.") and are taken as true and constructed in the light most favorable to the Plaintiff at this stage.

Plaintiff is an inmate at Green Haven Correctional Facility. (Am. Compl. p. 3.) On April 9, 2020, at around 3:00 AM, Plaintiff was awakened from his sleep and ordered to prepare himself for a trip to "an outside hospital." (Am. Compl. ¶ 1.) At that point, the Empire State Ambulance Corp was in the lobby awaiting Plaintiff. (Am. Compl. ¶ 3.) Plaintiff was then transported to Vassar Brothers Medical Center, arriving at 4:05 AM. (Am. Compl. ¶ 7.) At 4:29 AM, Dr. Bruce Gendron performed "an XR chest on Plaintiff's chest" and diagnosed Plaintiff with "bilateral lower lung infiltrates." (Am. Compl. ¶ 9.) Dr. Jesse M. Wolstein was the primary care physician provider and diagnosed Plaintiff with "[a]cute hypoxemic respiratory failure, Covid-19 virus infection, and pneumonia." (Am. Compl. ¶ 10.) Dr. Hector I. Ojeda-Martinez further diagnosed Plaintiff with "[a]bnormal liver enzymes and elevate[d] troponin." (Am. Compl. ¶ 11.) Dr. Robert U. Mmerole diagnosed Plaintiff with "[c]ough and . . . non-ST elevated myocardial infarction." (Am. Compl. ¶ 12.) Nurse Caroline M. Devlin and Amber Funk also diagnosed Plaintiff with shortness of breath. (Am. Compl. ¶ 13.)

After performing an assessment of Plaintiff, Wolstein prescribed Plaintiff with a series of medication, and, thereafter, Plaintiff was "transported to an isolated room to begin with Covid-19 regimen test-trial." (Am. Compl. ¶¶ 17-19.) Plaintiff states that no member of Vassar Brothers Medical Center "warned him [of] the potential serious side effects" of his medication regiment.

(Am. Compl. ¶ 20.) That same day at approximately 1:00 PM, Plaintiff was told by an "unknown doctor with face mask" that he had a fifty percent chance of survival. (Am. Compl. ¶ 21.) This caused the Plaintiff to panic, thinking he was going to die because he did not ask the purposes of the medication he was prescribed. (Am. Compl. ¶ 22.)

Based on the foregoing, Plaintiff brings Section 1983 claims alleging violations of the Eighth Amendment.

## PROCEDURAL HISTORY

On October 13, 2021, Plaintiff commenced this action against the Defendants in his Complaint. (ECF No. 1). On December 7, 2022, the Court issued an Opinion and Order dismissing the Complaint's claims in its entirety, granting Plaintiff leave to file an Amended Complaint. (ECF No. 95). Then, on July 31, 2023, Plaintiff filed his First Amended Complaint (ECF No. 117). Finally, on November 15, 2023, Plaintiff filed his Second Amended Complaint ("Am. Compl") (ECF No. 149). The Second Amended Complaint is the operative Complaint. On May 13, 2024, Annucci filed his motion to dismiss and his memorandum of law in support ("Annucci Motion") (ECF Nos. 177 and 178), Wolstein filed his motion to dismiss, memorandum of law in support, and reply affirmation in support of his motion ("Wolstein Motion") (ECF Nos. 180, 181 and 204), and Vassar Defendants filed their motion to dismiss and memorandum of law in support ("Vassar Motion") (ECF Nos. 182 and 183). On August 2, 2024, Plaintiff filed oppositions to Annucci, Wolstein, and Vassar Defendants' respective motions to dismiss (ECF Nos. 196 and 197, "196 Opposition" or "196 Opp." and "197 Opposition" or "197 Opp.", respectively.) On September 10, 2024, Annucci filed a reply in support of his motion to dismiss ("Annucci Reply") (ECF No. 206), Wolstein filed a reply in support of his motion to dismiss ("Wolstein Reply") (ECF No. 205), and Vassar Defendants filed a reply in support of their motion to dismiss ("Vassar Reply") (ECF No.

207). Finally, on September 25, 2024, Plaintiff filed an additional opposition to the Defendants' respective oppositions (ECF No. 208, "208 Opposition" or "208 Opp.")

## LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") provides in relevant part, that a case is properly dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it. When resolving a Rule 12(b)(1) motion for lack of lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986). Plaintiff bears the burden of demonstrating by a preponderance of the evidence that subject matter jurisdiction exists. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996).

### B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents

4

that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

C. Section 1983

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To assert a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. See Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998); Quinn v. Nassau Cty. Police

Dep't, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.")

### D. Law-of-the-Case Doctrine

The law-of-the-case doctrine "holds that when a court has ruled on an issue, that decision should generally be adhered to by the court in subsequent stages unless cogent and compelling reasons militate otherwise." *Delville v. Firmenich Inc.*, 23 F. Supp. 3d 414, 425 (S.D.N.Y. 2014) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). *See also In re Peters*, 642 F.3d 381 (2d Cir. 2011) (noting that while not binding the law-of-the-case doctrine counsels against a court revisiting prior rulings absent compelling reasons such as the need to correct a clear error or prevent manifest injustice); *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100 (S.D.N.Y. 2010) (same).

### E. *Pro Se* Pleading Standard

Where a litigant is *pro se*, the Court is empowered to consider "new facts raised in opposition papers to the extent they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018). A Court may consider "new claims appearing for the first time in the briefing 'if the claims could have been asserted based on the facts alleged in the complaint." *Vlad-Berindan v.MTA New York City Transit*, No. 14-cv-675, 2014 WL 6982929, at *5 (S.D.N.Y.2014) (citing *Rosado v. Herard*, No. 12-cv-8943, 2013 WL 6170631, at *3 (S.D.N.Y. 2013). Courts are to read a *pro se* litigant's papers "liberally" and "interpret them to raise the strongest argument that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 791 (2d Cir. 1994).

# DISCUSSION

Plaintiff brings claims pursuant to § 1983, alleging several Eighth Amendment violations. The Court addresses them in turn.

### A. Whether Annucci was Sufficiently Involved for Section 1983's Personal Involvement Requirement

This Court previously dismissed Plaintiff's Section 1983 claim for failure to demonstrate Annucci's personal involvement in any alleged deprivation of constitutional rights. (Doc. No. 95, Op. and Order, 12/7/22, pp. 10-11.) Plaintiff's Second Amended Complaint and opposition letters are similarly deficient, offering no further substantive allegations that would indicate Annucci's involvement in any purported constitutional violations. Therefore, the law-of-case doctrine favors dismissing Plaintiff's claim against Annucci once more.

To restate the relevant standard, in order to bring forward a Section 1983 claim, a plaintiff must demonstrate each defendant's personal involvement in the constitutional deprivation. *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996). Personal involvement is defined as "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Id*. A defendant "may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Id*. A defendant "may not be held responsible unless he was personally involved in the alleged constitutional violations." *Whitton v. Williams*, 90 F. Supp. 2d 420, 427 (S.D.N.Y. 2000).

The Court finds that Plaintiff has still failed to allege sufficient personal involvement necessary to state a Section 1983 claim against Annucci. Except for naming Annucci as a Defendant (Am. Compl. p. 4), the Second Amended Complaint does not offer substantive allegations demonstrating Annucci's involvement in any deprivation of constitutional rights.

7

Plaintiff's opposition papers similarly do not offer any substantive allegations that would indicate Annucci's personal involvement as required to effectuate a Section 1983 claim. (196 Opp., 197 Opp., and 208 Opp.) Plaintiff seems to suggest that Annucci received complaints from Plaintiff (*see* 208 Opp. p. 4), but "[a]mple Second Circuit case law makes clear that a Plaintiff does not state a claim where he alleges only that a supervisory official received reports of wrongdoing." *Samuels v. Fischer*, 168 F. Supp. 3d 625, 637 (S.D.N.Y. 2016) (citations omitted); *see also Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (holding that DOCCS Commissioner was not personally involved simply because Plaintiff wrote complaint letters to him).

Annucci cannot be held liable solely by virtue of his title as Acting Commissioner of DOCCS. *See Dawson v. Cnty. of Westchester*, 351 F. Supp. 2d 176, 196 (S.D.N.Y. 2004) (noting that a defendant "in a § 1983 action is not liable simply on the basis of holding a high position of authority"). Without any further factual averments suggesting any personal involvement on the part of Annucci, the Second Amended Complaint remains deficient for the same reasons articulated in the Court's prior opinion. Therefore, the Second Amended Complaint, as currently written, has not stated a plausible Section 1983 claim against Annucci, and the Court grants Annucci's motion to dismiss Plaintiff's claims without prejudice.

**B. Whether the Vassar Defendants and Wolstein are State Actors for the Purposes of Section 1983 Liability**

The Court previously dismissed Plaintiff's Section 1983 claim against the Vassar Defendants and Wolstein on the grounds that they did not qualify as state actors for the purposes of imposing Section 1983 liability. (Doc. No. 95, Op. and Order, 12/7/22, pp. 6-7.) Plaintiff's Second Amended Complaint and opposition letters do not offer further substantive allegations that would justify a finding that the Vassar Defendants and Wolstein are state actors. As a result, the law-of-case doctrine counsels against deviating from the Court's prior ruling on the inapplicability

of Section 1983 to the Vassar Defendants and Wolstein and favors dismissing Plaintiff's Section 1983 claim against the Vassar Defendants and Wolstein once more.

To reiterate the relevant standard, in order to prosecute a Section 1983 claim a Plaintiff must demonstrate that he suffered injury at the hands of a state actor or private party acting under color of state law. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). Importantly, courts in this circuit have held that "mere conclusory allegation[s] that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Id*. Three tests are employed to ascertain whether a private entity's conduct can be considered state action: the compulsion test, the nexus test, and the public function test. *Wilson v. HSBC Bank, USA*, No. 16-CV-8405 (NSR), 2018 WL 1449204, *14 (S.D.N.Y. Mar. 22, 2018).

Plaintiff's Second Amended Complaint details Plaintiff's experiences with the Vassar Defendants and Wolstein, and his grievances with his treatment. (Am. Compl. ¶¶ 7-8, 20.) Such allegations do demonstrate that the Vassar Defendants and Wolstein were involved in administering care to an inmate. However, without pleading anything further, Plaintiff cannot satisfy any of the three state action tests. Plaintiff does not assert that the Vassar Defendants and Wolstein acted under any "coercive power or significant encouragement . . . that the[ir] choice[s] must be in law deemed to be that of the State." *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982). *See also McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (affirming dismissal of § 1983 claim where private entity was not compelled by state to provide its services). Likewise, Plaintiff does not demonstrate a sufficient nexus between the Vassar Defendants, Wolstein and the government, given that while the Vassar Defendants and Wolstein were treating an inmate, they were doing so "in the ordinary course of diagnosis or treating an illness or injury." *Cf Johnson v. City of New York*, 2021 WL 4896477 (S.D.N.Y. Aug. 23, 2021) (finding sufficiently close nexus

9

between hospital and the government where treatment was administered for investigatory purposes rather than in the hospital's general function of treating the public).

As to whether the Vassar Defendants and Wolstein were performing a public function, the relevant consideration is whether the conduct at issue is "traditionally the exclusive prerogative of the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974). State action "may be found in situations where an activity that traditionally has been the exclusive, or near exclusive function of the State has been contracted out to a private entity." *Horvath v. Westport Libr. Ass'n*, 362 F.3d 147, 151 (2d Cir. 2004). Here, Plaintiff does not offer any allegations that the Vassar Defendants and Wolstein were performing a public function, and it is difficult to envision the functioning of a private hospital providing care to the public being construed as an "exclusive or near exclusive function of the State." To the contrary, "[a]s a general rule, private hospitals do not act under color of state law for § 1983 purposes." *Thomas v. Beth Israel Hosp. Inc.*, 710 F. Supp. 935, 941 (S.D.N.Y. 1989). Courts have reiterated that "[u]nless certain rare conditions exist, private hospitals . . . are not state actors for purposes of Section 1983." *Amofa v. Bronx-Lebanon Hosp. Ctr.*, 2006 WL 3316278 (S.D.N.Y. Nov. 13, 2006). As a result, the Vassar Defendants and Wolstein cannot be construed to be taking action that is tantamount to state action. Plaintiff's Second Amended Complaint and opposition letters therefore fail to demonstrate the Vassar Defendants and Wolstein's actions should be attributed to the state under any of the three state action tests.

The only additional further substantive allegations Plaintiff offers is when Plaintiff writes: "[e]ven though Dr. Wolstein may not qualify as a state actor" he "certainly qualif[ies] as 'private entity,' who violated plaintiff's federal rights." (197 Opp., p. 3.) Such an argument only offers a legal conclusion "couched as a factual allegation." *Iqbal*, 556 U.S. 662 at 678. *See Fahie v. Rivera*, 2009 WL 2780144, *2 (S.D.N.Y. Aug. 31, 2009) (holding that Plaintiff failed to demonstrate

10

hospital defendants acted under color of state law when Plaintiff only offered conclusory assertions that hospital defendants violated his rights). As acknowledged *supra*, conclusory allegations surrounding a private entity's conduct are not enough demonstrate that that they were a state actor or acting under the color of law for the purposes of Section 1983 liability. *Ciambriello*, 292 F.3d 307, 324.  Additionally, this allegation is not enough to carry a Section 1983 claim against a private entity, as the "color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or unlawful." *Heicklen v. U.S. Dep't of Homeland Sec.*, 2011 WL 3841543 (S.D.N.Y. Aug. 30, 2011) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999)). Thus, mere claims of discriminatory conduct on the part of a private actor are not, without more, enough to form the basis of a plausible Section 1983 claim. Lastly, while Wolstein did provide care to an inmate, the Second Amended Complaint and Plaintiff's opposition letters do not allege that Wolstein was employed by the government nor that he was under contract to provide medical care to inmates. As a general matter, providing care to an inmate does not, without more, justify imposing Section 1983 liability on a private party. *See Nunez v. Horn*, 72 F. Supp. 2d 24, 27 (N.D.N.Y. 1999) (finding that physician was not acting under color of law where physician was "not employed by the Bureau of Prisons, nor was he under contract with the state to render medical services to prison inmates").

  Accordingly, the Court finds that Plaintiff's Second Amended Complaint and opposition papers remain deficient for reasons the Court articulated in its prior opinion. The Court therefore concludes that Plaintiff has not plausibly alleged a viable Section 1983 claim against the Vassar Defendants and Wolstein and grants the Vassar Defendants and Wolstein's respective motions to dismiss Plaintiff's claims without prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS each of the moving Defendants' motion to dismiss Plaintiff's Eighth Amendment claims. Specifically, the Court grants Defendant Jesse M. Wolstein's motion to dismiss, Defendant Anthony Annucci's motion to dismiss, and Defendants Vassar Brothers Medical Center, Doctor Daniel E. Laurie, Doctor Sajin A. Pillai, Doctor Hector I. Ojeda-Martinez, physician provider Sehrish Shahid and Doctor Robert U. Mmereole's motion to dismiss.

*Pro se* Plaintiff is granted leave to file a Third Amended Complaint (blank form attached hereto) by January 6, 2025. *Pro se* Plaintiff is advised that the Third Amended Complaint will replace, not supplement, the Second Amended Complaint, and so any claims that he wishes to pursue must be included in the Third Amended Complaint. Should *pro se* Plaintiff file a Third Amended Complaint, the Defendants are directed to answer or otherwise respond by January 30, 2025, and the parties are directed to complete and file a Case Management Plan and Scheduling Order (blank form attached) by February 20, 2025. If *pro se* Plaintiff fails to file a Third Amended Complaint within the time allowed, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motions at ECF No. 177, 180, 182, and 204 and to mail a copy of this Order to the *pro se* Plaintiff at the address listed on ECF and to show service on the docket.

Dated:   November 25, 2024                                         SO ORDERED:
         White Plains, New York

                                                                                 NELSON S. ROMÁN
                                                                        United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
_____
Write the full name of each plaintiff.

-against-

_____
_____
_____
_____
Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____
(Include case number if one has been assigned)

**AMENDED COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

## I.     LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐ Violation of my federal constitutional rights

☐ Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name          Middle Initial          Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                          State                    Zip Code

## III.   PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☐ Convicted and sentenced prisoner
☐ Other: _____

## IV. DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name            Last Name            Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City            State            Zip Code

Defendant 2:

First Name            Last Name            Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City            State            Zip Code

Defendant 3:

First Name            Last Name            Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City            State            Zip Code

Defendant 4:

First Name            Last Name            Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City            State            Zip Code

## V. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

_____        _____
Dated                                 Plaintiff's Signature

_____        _____
First Name          Middle Initial    Last Name

_____
Prison Address

_____
County, City                State              Zip Code

Date on which I am delivering this complaint to prison authorities for mailing: _____

UNITED STATES DISTRICT COURT            Rev. Jan. 2012

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

                                                     **CIVIL CASE DISCOVERY PLAN**

                  Plaintiff(s),       **AND SCHEDULING ORDER**

   - against -

                  Defendant(s).     _____ CV _____ (NSR)

------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

   a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

   b. Depositions shall proceed concurrently.

   c. Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.